IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alfredo Corral-Lozano ) | No. CV-09-022-PHX-MHM (LOA) |
| ) | |
| Petitioner, ) | **REPORT AND RECOMMENDATION** |
| ) | |
| vs. ) | |
| ) | |
| Charles L. Ryan, et al. ) | |
| ) | |
| Respondents. ) | |
| ) | |
| ————————————————— ) | |

 Petitioner has filed a Petition for Writ of Habeas Corpus by Person in State Custody Pursuant to 28 U.S.C. § 2254.  (docket # 1)  Respondents filed an Answer, docket # 15, to which Petitioner has not replied and deadline has expired.  Accordingly, this matter is ripe for review.  For the reasons discussed below, the undersigned recommends denying the Petition.

**I. Factual and Procedural Background**

 The following events gave rise to Petitioner's challenged convictions and sentences.

 **A.  Proceedings in Arizona Superior Court**

 At around 10:45 p.m. on December 10, 2004, Phoenix Police received a call from an individual stating that someone had offered to sell him drugs at an abandoned house in Phoenix.  (Respondents' Exhs. A, B)  Four officers responded to the call and entered the abandoned home's backyard through a large hole in the fence.  (Respondents' Exh. B; Exh. L at 28-29)  The police officers noticed two women sitting inside an open shed in the yard, and three of the officers entered the shed.  (Respondents' Exh. B at 2; Exh. L at 30)  The

fourth officer, Daniel Jones, remained in the backyard where he noticed Petitioner in the shadows near the house. (Respondents' Exh. B at 2; Exh. L at 30-31)   Officer Jones announced that he was a police officer and shined his flashlight on Petitioner. (*Id.*) Petitioner turned towards Officer Jones, raised a gun, and pointed it at the officer. (Respondents' Exh. B at 2; Exh. L at 32) Officer Jones moved to his left, and Petitioner followed him with the gun. (Respondents' Exh. L at 33)  When Officer Jones reached for his handgun in his holster, Petitioner threw the gun and ran. (Respondents' Exh. L at 33-34) Petitioner was apprehended in front of the house, and Officer Jones identified Petitioner as the person who had pointed the gun at him. (Respondents' Exh. B at 3; Exh. L at 37)   Upon searching Petitioner, police found crack cocaine, a pipe, and shotgun shells. (Respondents' Exh. B at 3; Exh. L at 39)

Based on the foregoing, Petitioner was indicted in the Superior Court of Arizona, Maricopa County, on one count of possession or use of narcotic drugs, one count of possession of drug paraphernalia, and one count of aggravated assault. (Respondents' Exh. A)  Petitioner's case proceeded to trial,[1] and the jury found him guilty of all charges. (Respondents' Exh. B at 4)   On May 25, 2005, the court sentenced Petitioner to 4.5 years' imprisonment for the narcotics conviction; 1.75 years' imprisonment for the drug paraphernalia conviction; and 10.5 years' imprisonment for the aggravated assault charge. (*Id.*)   The court ordered the sentences to run concurrently, and gave Petitioner credit for 166 days of pre-sentence incarceration. (*Id.*)

**B.  Direct Appeal**

Petitioner appealed to the Arizona Court of Appeals. (Respondents' Exhs. C, D) Petitioner's counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), asking the court to search the record for fundamental error. (Respondents' Exh. C) Additionally, counsel mentioned three issues urged by Petitioner: (1) there was inadequate minority representation on the jury; (2) the prosecution's witnesses committed perjury; and

---

[1] The Honorable Frank T. Galati presided.

there was insufficient evidence to support Petitioner's convictions. Counsel requested leave for Petitioner to file a supplemental *pro per* brief addressing those issues. (Respondents' Exh. C at 4)

Petitioner subsequently filed a *pro per* brief arguing that: (1) he could not have pointed a shot gun at Officer Jones because he lived on the street and could not have been carrying a gun that large; (2) the police lacked a search warrant or probable cause to enter the backyard of the house where Petitioner was found; (3) Petitioner did not receive a fair trial because the jury did not include "three persons of each race;" (4) there was insufficient evidence to support his convictions; (5) the trial "focus[ed] on the drug charges and [the jury] used that to [find him] guilty o[f] the aggravated assault;" (6) the four police officers committed perjury because they gave differing accounts of the incident; (7) Officer Jones committed perjury when he said that he never had a conversation with Petitioner, and later destroyed evidence of a tape recorded interview; (8) if the police officers had entered a dark house and seen an armed suspect, they would have shot or killed him; (9) the court failed to consider that when police officers arrest armed individuals, the situation turns violent, and the fact that the situation did not turn violent in this case, proves that Petitioner did not point a gun at Officer Jones; and (10) Petitioner was not charged with resisting arrest. (Respondents' Exh. D at 1-4)

On April 11, 2006, the Arizona Court of Appeals affirmed Petitioner's convictions and sentences. (Respondents' Exh. B) Petitioner did not seek review in the Arizona Supreme Court.

**C. Post-Conviction Proceedings**

On May 10, 2006, Petitioner filed a notice of post-conviction relief pursuant to Ariz.R.Crim.P. 32. (Respondents' Exh. E) The court appointed counsel who subsequently notified the court that, after reviewing the transcripts and relevant documents, he could find no colorable claims to raise. (Respondents' Exh. F) On counsel's request, the court granted Petitioner an extension of time to file a *pro per* petition. (Respondents' Exh. F) On December 19, 2006, Petitioner filed a Petition for Post-Conviction Relief. (Respondents'

Exh. G)  Petitioner argued that he was entitled to relief because he had been denied his Sixth Amendment right to counsel.  Petitioner argued that counsel was ineffective because: (1) he failed to challenge the composition of the jury, which did not include any Hispanics; and (2) during closing argument, counsel failed to point out the police officers' inconsistent testimony.  (Respondents' Exh. G at 6)

On March 21, 2007, the court dismissed the petition for post-conviction relief finding that: (1) Petitioner's claim that counsel was ineffective for failing to challenge the racial composition of the jury was "precluded by Rule 32.5 for failing to provide any record to support the factual aspect of his claim;" (2) Petitioner failed to meet either prong of the *Strickland* test on his claim that counsel was ineffective for failing "to address a state witness's allegedly inconsistent testimony;" and (3) Petitioner did not satisfy either prong of the *Strickland* test with respect to his claim that "trial counsel's closing argument was ineffective."  (Respondents' Exh. H)

On May 1, 2007, Petitioner filed a petition for review in the Arizona Court of Appeals.  (Respondents' Exh. I)  Petitioner argued that counsel was ineffective because: (1) he did not ask the court to excuse a juror based on her "ties with the State;" (2) he did not "ensure that the racial make-up of the jury [was] more representative of the population;" and (3) he did not impeach two police officers with their inconsistent statements.  (Respondents' Exh. I)  On January 4, 2008, the Arizona Court of Appeals denied relief without comment. (Respondents' Exh. J)  Petitioner did not seek review in the Arizona Supreme Court.

### D.  Federal Petition for Writ of Habeas Corpus

Petitioner subsequently filed a timely[2] Petition for Writ of Habeas Corpus raising the following claims:

> **Ground One:**  Petitioner's Sixth Amendment rights were violated because "there was inadequate minority representation on the jury."

> **Ground Two:**  Petitioner's trial counsel was ineffective for (a) "failing to

---

[2]  Respondents concede that the Petition was timely filed in accordance with 28 U.S.C. § 2244(d).  (docket # 15 at 6-7)

- 4 -

challenge the minority representation on the jury," and (b) "by not addressing inconsistent testimony in his closing argument."

**Ground Three:** There was insufficient evidence to support the jury's verdict on the aggravated assault count.

**Ground Four**: The police "failed to obtain a search warrant to enter the premises" where Petitioner was located, in violation of the Fourth Amendment.

(docket # 1 at 5-13)

Respondents assert that Petitioner's claims raised in Grounds 1, 2(a), and 3 are procedurally defaulted and barred from federal habeas corpus review. (docket # 15 at 7) Respondents further argue that all of Petitioner's claims lack merit. Petitioner has not replied. The Court will discuss the applicable law below and then discuss Petitioner's claims.

## II. Exhaustion and Procedural Default

### A. Legal Principles

A federal court may not grant a petition for writ of habeas corpus unless the petitioner has exhausted the state remedies available to him. 28 U.S.C. § 2254(b). The exhaustion inquiry focuses on the availability of state remedies at the time the petition for writ of habeas corpus is filed in federal court. *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999). Petitioner "shall not be deemed to have exhausted . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). In other words, proper exhaustion requires the prisoner to "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. 845. "One complete round" includes filing a "petition[] for discretionary review when that review is part of the ordinary appellate review procedure in the State." *Id.*

To exhaust state remedies, a petitioner must afford the state courts the opportunity to rule upon the merits of his federal claims by "fairly presenting" them to the state's "highest" court in a procedurally appropriate manner. *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (stating that "[t]o provide the State with the

necessary 'opportunity,' the prisoner must "fairly present" her claim in each appropriate state court . . . thereby alerting the court to the federal nature of the claim."). In Arizona, unless a prisoner has been sentenced to death, the "highest court" requirement is satisfied if the petitioner has presented his federal claim to the Arizona Court of Appeals either on direct appeal or on post-conviction review. *Crowell v. Knowles,* 483 F.Supp.2d 925 (D.Ariz. 2007) (discussing *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999)).

In addition to presenting his claims to the proper court, a state prisoner must fairly present his claims to satisfy the exhaustion requirement. Fair presentation requires a petitioner to describe both the operative facts and the federal legal theory to the state courts. *Baldwin*, 541 U.S. at 28. It is not enough that all of the facts necessary to support the federal claim were before the state court or that a "somewhat similar" state law claim was raised. *Baldwin*, 541 U.S. at 28 (stating that a reference to ineffective assistance of counsel does not alert the court to federal nature of the claim). Rather, the habeas petitioner must cite in state court to the specific constitutional guarantee upon which he bases his claim in federal court. *Tamalini v. Stewart*, 249 F.3d 895, 898 (9th Cir. 2001). Similarly, general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are insufficient to establish fair presentation of a federal constitutional claim. *Lyons v. Crawford*, 232 F.3d 666, 669 (9th Cir. 2000), *amended on other grounds*, 247 F.3d 904 (9th Cir. 2001); *Shumway v. Payne*, 223 F.3d 982, 987 (9th Cir. 2000) (insufficient for prisoner to have made "a general appeal to a constitutional guarantee," such as a naked reference to "due process," or to a "constitutional error" or a "fair trial"). Likewise, a mere reference to the "Constitution of the United States" does not preserve a federal claim. *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996). Even if the basis of a federal claim is "self-evident" or if the claim would be decided "on the same considerations" under state or federal law, the petitioner must make the federal nature of the claim "explicit either by citing federal law or the decision of the federal courts . . . ." *Lyons*, 232 F.3d at 668. A state prisoner does not fairly present a claim to the state court if the court must read beyond the pleadings filed in that court to discover the federal claim. *Baldwin*, 541 U.S. at 27.

In sum, "a petitioner fairly and fully presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum, (2) through the proper vehicle, and (3) by providing the proper factual and legal basis for the claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005)(citations omitted).

### *Procedural Default*

A habeas petitioner's claims may be precluded from federal review in either of two ways. First, a claim may be procedurally defaulted in federal court if it was actually raised in state court but found by that court to be defaulted on state procedural grounds such as waiver or preclusion. *Ylst v. Nunnemaker*, 501 U.S. 797, 802-05 (1991); *Coleman*, 501 U.S. at 729-30. Thus, a state prisoner may be barred from raising federal claims that he did not preserve in state court by making a contemporaneous objection at trial, on direct appeal, or when seeking post-conviction relief. *Bonin v. Calderon*, 59 F.3d 815, 842 (9th Cir. 1995) (stating that failure to raise contemporaneous objection to alleged violation of federal rights during state trial constitutes a procedural default of that issue); *Thomas v. Lewis*, 945 F.2d 1119, 1121 (9th Cir. 1991) (finding claim procedurally defaulted where the Arizona Court of Appeals held that habeas petitioner had waived claims by failing to raise them on direct appeal or in first petition for post-conviction relief.) If the state court also addressed the merits of the underlying federal claim, the "alternative" ruling does not vitiate the independent state procedural bar. *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Carringer v. Lewis*, 971 F.2d 329, 333 (9th Cir. 1992) (state supreme court found ineffective assistance of counsel claims "barred under state law," but also discussed and rejected the claims on the merits, *en banc* court held that the "on-the-merits" discussion was an "alternative ruling" and the claims were procedurally defaulted and barred from federal review). A higher court's subsequent summary denial of review affirms the lower court's application of a procedural bar. *Nunnemaker*, 501 U.S. at 803.

The second procedural default scenario arises when a state prisoner failed to present his federal claims to the state court, but returning to state court would be "futile" because the state courts' procedural rules, such as waiver or preclusion, would bar consideration of the

previously unraised claims. *Teague v. Lane*, 489 U.S. 288, 297-99 (1989); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002); *State v. Mata*, 185 Ariz. 319, 322-27, 916 P.2d 1035, 1048-53 (1996); Ariz. R. Crim. P. 32.2(a) & (b); Ariz. R. Crim. P. 32.1(a)(3) (post-conviction review is precluded for claims waived at trial, on appeal, or in any previous collateral proceeding); 32.4(a); Ariz. R. Crim. P. 32.9 (stating that petition for review must be filed within thirty days of trial court's decision). A state post-conviction action is futile where it is time-barred. *Beaty*, 303 F.3d at 987; *Moreno v. Gonzalez*, 116 F.3d 409, 410 (9th Cir. 1997) (recognizing untimeliness under Ariz. R. Crim. P. 32.4(a) as a basis for dismissal of an Arizona petition for post-conviction relief, distinct from preclusion under Rule 32.2(a)). This type of procedural default is known as "technical" exhaustion because, although the claim was not actually exhausted in state court, the petitioner no longer has an available state remedy. *Coleman*, 501 U.S. at 732 ("A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no remedies any longer 'available' to him.").

### Excusing Procedural Default

In either case of procedural default, federal review of the claim is barred absent a showing of "cause and prejudice" or a "fundamental miscarriage of justice." *Cook v. Schriro*, 516 F.3d 802 (9th Cir. 2008); *Dretke v. Haley*, 541 U.S. 386, 393-94, (2004); *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish "cause," a petitioner must establish that some objective factor external to the defense impeded his efforts to comply with the state's procedural rules. *Id*. The following objective factors may constitute cause: (1) interference by state officials, (2) a showing that the factual or legal basis for a claim was not reasonably available, or (3) constitutionally ineffective assistance of counsel. *Id*. Ordinarily, the ineffective assistance of counsel in collateral proceedings does not constitute cause because "the right to counsel does not extend to state collateral proceedings or federal habeas proceedings." *Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1306 (9th Cir. 1996). Prejudice is actual harm resulting from the constitutional violation or error. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984). To establish prejudice, a habeas petitioner

bears the burden of demonstrating that the alleged constitutional violation "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982); *Thomas v. Lewis*, 945 F.2d 1119, 1123 (9th Cir. 1996). Where petitioner fails to establish cause, the court need not reach the prejudice prong.

A federal court may also review the merits of a procedurally defaulted claim if the petitioner demonstrates that failure to consider the merits of his claim will result in a "fundamental miscarriage of justice." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). A "fundamental miscarriage of justice" occurs when a constitutional violation has probably resulted in the conviction of one who is actually innocent. *Id.* To satisfy the "fundamental miscarriage of justice" standard, petitioner must establish that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt in light of new evidence. *Schlup*, 513 U.S. at 327; 28 U.S.C. § 2254(c)(2)(B). Even if petitioner asserts a claim of actual innocence to excuse his procedural default of a federal claim, federal habeas relief may not be granted absent a finding of an independent constitutional violation occurring in the state criminal proceedings. *Dretke*, 541 U.S. at 393-94.

**B. Application of Law to Ground One**

In Ground One, Petitioner argues that there was inadequate minority representation in the jury pool and the jury in violation of the Sixth Amendment. (docket # 1 at 6-8) Respondents assert that this claim is procedurally defaulted because Petitioner: (1) did not raise it as a federal claim before the state courts; and (2) did not provide any facts or evidence to the state court in support of this claim. Rather, Petitioner merely argued that there "was inadequate minority representation on the jury," and that he was denied a fair trial because there were no Hispanics or members of any race "but white" on the jury. (Respondents' Exh. C at 4, Exh. D at 2)

On direct review, the Arizona Court of Appeals characterized Petitioner's claim as alleging that he "was denied the right to be judged by a racially neutral jury because his jury consisted of only Caucasians." (Respondents' Exh. B at 5) Relying on Arizona case law,

the appellate court held that "all the Constitution forbids is systematic exclusion of any identifiable classes from jury panels and from juries ultimately drawn from those panels." (*Id.*)  The court found that Petitioner "failed to prove that any identifiable classes were excluded from his jury," and that he "offered no facts to support his allegation." (Respondents' Exh. B at 6)  The appellate court further noted that "the record lacks any evidence of the racial makeup of the jury or jury pool." (*Id.*)  Thus, Petitioner failed to establish on appeal that "any class was excluded from his jury. (*Id.*)  On post-conviction review, Petitioner did not assert an independent Sixth Amendment claim based on the jury composition. (Respondents' Exhs. F, G, I)  Rather, he asserted a claim of ineffective assistance of counsel based on counsel's failure to challenge the jury composition. (*Id.*)

As Respondents argue, Ground One of the pending Petition is procedurally defaulted because Petitioner did not present this federal claim to the state courts.  Additionally, Petitioner did not provide any facts in support of his jury composition claim raised to the state court. *See Tamayo-Reyes*, 504 U.S. at 9 (requiring "full factual development" in the "earlier, state court proceedings" to allow the state court to "correct its own errors in the first instance.") The state court, not the federal court, is the "appropriate forum for resolution of factual issues in the first instance." *Id.*  Petitioner failed to fairly present Ground One to the Arizona state courts.

Petitioner did not raise a Sixth Amendment challenge to the jury composition in the Arizona Courts, and any attempt to return to state court to present such a federal claim would be futile because it would be procedurally barred pursuant to Arizona law.  Petitioner is time-barred under Arizona law from raising his claim in a successive petition for post-conviction relief because the time for filing a notice of post-conviction relief has long expired. *See* Ariz.R.Crim.P. 32.1 and 32.4 (a petition for post-conviction relief must be filed "within ninety days after the entry of judgment and sentence or within thirty days after the issuance of the order and mandate in the direct appeal, whichever is later.") A state post-conviction action is futile where it is time-barred. *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002); *Moreno v. Gonzalez*, 116 F.3d 409, 410 (9th Cir. 1997) (recognizing

untimeliness under Ariz. R. Crim. P. 32.4(a) as a basis for dismissal of an Arizona petition for post-conviction relief, distinct from preclusion under Rule 32.2(a)).

Although Rule 32.4 does not bar dilatory claims if they fall within the category of claims specified in Ariz.R.Crim.P 32.1(d) through (h), Petitioner has not asserted that any of these exceptions apply to him. Furthermore, under Rule 32.2(a) of the Arizona Rules of Criminal Procedure, a defendant is precluded from raising claims that could have been raised on direct appeal or in any previous collateral proceeding. *See also Krone v. Hotham*, 181 Ariz. 364, 366, 890 P.2d 1149, 1151 (1995) (capital defendant's early petition for post-conviction relief raised limited number of issues and waived other issues that he could have then raised, but did not); *State v. Curtis*, 185 Ariz. 112,113, 912 P.2d 1341, 1342 (App. 1995) ("Defendants are precluded from seeking post-conviction relief on grounds that were adjudicated, or could have been raised and adjudicated, in a prior appeal or prior petition for post-conviction relief."); *State v. Berryman*, 178 Ariz. 617, 624, 875 P.2d 850, 857 (App. 1994) (defendant's claim that his sentence had been improperly enhanced by prior conviction was precluded by defendant's failure to raise issue on appeal). Petitioner's Sixth Amendment claim could have been raised in his post-conviction relief proceeding. Consequently, the state court would find this claim procedurally barred. In section E, *infra*, the Court will address whether Petitioner has established a basis for overcoming the procedural bar.

## C. Application of Law to Ground 2(a)

In Ground 2(a), Petitioner argues that trial counsel was ineffective for failing to "challenge the minority representation on the jury." (docket # 1 at 9-11) Respondents argue that this claim is procedurally defaulted and barred from federal habeas corpus review because the state court dismissed this claim on post-conviction review because it did not comply with Arizona Rule of Criminal Procedure 32.5, which requires a defendant to provide "facts within his personal knowledge" to support a claim, along with "[a]ffidavits, records, or other evidence currently available to the defendant supporting the allegations of the petition." (Respondents' Exh. H)

A petition for post-conviction relief must include facts underlying petitioner's claims, and must describe evidence in support of the factual allegations. *Baja v. Ducharme*, 187 F.3d 1075, 1079 (9th Cir. 1999). After the trial court rejected, for lack of factual support, Petitioner's claim that counsel was ineffective for failing to challenge the racial composition of the jury, Petitioner never attempted to file an amended petition providing factual support for his claim.

Petitioner's claim of ineffective assistance asserted in Ground 2(a) is procedurally defaulted by virtue of the state court's application of a procedural bar when Petitioner asserted this claim on post-conviction review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 802-05 (1991); *Coleman*, 501 U.S. at 729-30; *Thomas v. Lewis*, 945 F.2d 1119, 1121 (9th Cir. 1991) (finding claim procedurally defaulted where the Arizona Court of Appeals held that habeas petitioner had waived claims by failing to raise them on direct appeal or in first petition for post-conviction relief.)

### D.  Application of Law to Ground Three

In Ground Three, Petitioner argues that "there was insufficient evidence to support" the jury's verdict on the aggravated assault count. As Respondents argue, this claim is procedurally defaulted because Petitioner did not alert the state court to the federal nature of this claim. Rather, Petitioner simply argued that there was insufficient evidence. (Respondents' Exhs. C at 4, D at 2) Petitioner did not cite any federal law in support of his claim. (*Id.*) Likewise, the Arizona Court of Appeals relied solely on state law to conclude that "[t]he evidence permitted the jury to find beyond a reasonable doubt that [Petitioner] committed the aggravated assault." (Respondents' Exh. B at 6)

Habeas petitioners are required to place state courts on notice that they are seeking to vindicate federal rights. *Henry*, 513 U.S. at 365-66 (noting that habeas petitioner must make federal claim known in both state and federal court); *Zenon*, 88 F.3d 830 (stating that "[i]f petitioner fails to alert state court to the fact that he is raising a federal constitutional claim, his federal claim is unexhausted regardless of its similarity to the issues raised in state court."). A general reference to insufficiency of the evidence lacks the specificity required

to alert the state court to the federal dimension of such a claim. *See Lyons v. Crawford*, 232 F.3d 666, 669-70 (9th Cir. 2000).

Petitioner's federal claim of insufficient evidence is procedurally defaulted because it is too late for him to return to state court to assert this claim. Any attempt to return to state court to present that claim would be futile because it would be procedurally barred pursuant to Arizona law. Petitioner is time-barred under Arizona law from raising his claims in a successive petition for post-conviction relief because the time for filing a notice of post-conviction relief has long expired. *See* Ariz.R.Crim.P. 32.1 and 32.4 (a petition for post-conviction relief must be filed "within ninety days after the entry of judgment and sentence or within thirty days after the issuance of the order and mandate in the direct appeal, whichever is later.") A state post-conviction action is futile where it is time-barred. *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002); *Moreno v. Gonzalez*, 116 F.3d 409, 410 (9th Cir. 1997) (recognizing untimeliness under Ariz. R. Crim. P. 32.4(a) as a basis for dismissal of an Arizona petition for post-conviction relief, distinct from preclusion under Rule 32.2(a)).

Although Rule 32.4 does not bar dilatory claims if they fall within the category of claims specified in Ariz.R.Crim.P 32.1(d) through (h), Petitioner has not asserted that any of these exceptions apply to him. Furthermore, under Rule 32.2(a) of the Arizona Rules of Criminal Procedure, a defendant is precluded from raising claims that could have been raised on direct appeal or in any previous collateral proceeding. *See also Krone v. Hotham*, 181 Ariz. 364, 366, 890 P.2d 1149, 1151 (1995) (capital defendant's early petition for post-conviction relief raised limited number of issues and waived other issues that he could have then raised, but did not); *State v. Curtis*, 185 Ariz. 112,113, 912 P.2d 1341, 1342 (App. 1995) ("Defendants are precluded from seeking post-conviction relief on grounds that were adjudicated, or could have been raised and adjudicated, in a prior appeal or prior petition for post-conviction relief."); *State v. Berryman*, 178 Ariz. 617, 624, 875 P.2d 850, 857 (App. 1994) (defendant's claim that his sentence had been improperly enhanced by prior conviction was precluded by defendant's failure to raise issue on appeal). The

aforementioned claim could have been raised in Petitioner's post-conviction relief proceeding. Consequently, the state court would find this claim procedurally barred. In section E, *infra*, the Court will address whether Petitioner has established a basis for overcoming the procedural bar.

## E. Excusing Procedural Bar

Because Petitioner's claims raised in Grounds 1, 2(a), and 3 are procedurally defaulted, habeas review of those claims is barred absent a showing of "cause and prejudice" or a "fundamental miscarriage of justice." *Dretke*, 541 U.S. at 393-94.

To establish "cause," a petitioner must establish that some objective factor external to the defense impeded his efforts to comply with the state's procedural rules. *Id.* The following objective factors may constitute cause: (1) interference by state officials, (2) a showing that the factual or legal basis for a claim was not reasonably available, or (3) constitutionally ineffective assistance of counsel. *Id.* Prejudice is actual harm resulting from the constitutional violation or error. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984). Where petitioner fails to establish cause for his procedural default, the court need not consider whether petitioner has shown actual prejudice resulting from the alleged constitutional violations. *Smith v. Murray*, 477 U.S. 527, 533 (1986).

Petitioner does not assert any basis to excuse his procedural default. As a general matter, Petitioner's *pro se* status and ignorance of the law do not satisfy the cause standard. *Hughes v. Idaho State Bd. of Corrections*, 800 F.2d 905, 908 (9th Cir. 1986). "[I]t is well established that 'ignorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse prompt filing.'" *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) (quoting *Fisher v. Johnson*, 174 F.3d 710, 714 (9th Cir. 1999)). Petitioner's ignorance of the law and indigent status do not distinguish him from the great majority of inmates pursuing habeas corpus relief. Such circumstances are not extraordinary and do not justify tolling the limitations period. "If limited resources, lack of legal knowledge, and the difficulties of prison life were an excuse for not complying with the limitation period, the AEDPA's limitation period would be meaningless since virtually all incarcerated prisoners have these

- 14 -

same problems in common." *Bolanos v. Kirkland*, No. 1:06-cv-00808-AWI-TAG HC, 2008 WL 928352, * 4 (E.D.Cal. April 4, 2008). *See also*, *Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006) (affirming denial of equitable tolling because neither the district court's failure to advise the petitioner of the right to amend his petition to include exhausted claims nor petitioner's inability to correctly calculate the limitations period were extraordinary circumstances warranting equitable tolling); *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) (holding that delays caused by prison inmate law clerk and law library closures do not justify equitable tolling). Likewise, Petitioner's lack of legal assistance is not an extraordinary circumstance. *See Ballesteros v. Schriro*, CV-06-675-EHC (MEA), 2007 WL 666927 (D.Ariz., February 26, 2007) (noting that a petitioner's *pro se* status, ignorance of the law, lack of representation during the applicable filing period, and temporary incapacity do not constitute extraordinary circumstances) (citing *Fisher v. Johnson*, 174 F.3d 170, 714-15 (5th Cir. 1999)).

A federal court may review the merits of a procedurally defaulted habeas claim if the petitioner demonstrates that failure to consider the merits of his claim will result in a "fundamental miscarriage of justice." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). A "fundamental miscarriage of justice" occurs when a constitutional violation has probably resulted in the conviction of one who is actually innocent. *Id.* Petitioner does not argue that failure to consider his claims will result in a fundamental miscarriage of justice.

In summary, federal review of Petitioner's claims raised in Grounds 1, 2(a), and 3 is procedurally barred. Petitioner has not established any basis to overcome the procedural bar, therefore, the Court need not reach the merits of those claims. However, in an abundance of caution, the Court will address the merits of Petitioner's claims.

**III.  Standard of Review**

In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA") which "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court

convictions are given effect to the extent possible under the law." *Bell v. Cone*, 535 U.S.
685, 693 (2002).

Under the AEDPA, a state prisoner "whose claim was adjudicated on the merits in
state court is not entitled to relief in federal court unless he meets the requirements of 28
U.S.C. § 2254(d)." *Price v. Vincent*, 538 U.S. 634, 638 (2003). Thus, a state prisoner is not
entitled to relief unless he demonstrates that the state court's adjudication of his claims
"resulted in a decision that was contrary to, or involved an unreasonable application of,
clearly established Federal law, as determined by the Supreme Court of the United States" or
"resulted in a decision that was based on an unreasonable determination of the facts in light
of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1),(2); *Carey
v. Musladin*, 549 U.S. 70, 127 S.Ct. 649, 653 (2006); *Lockyer v. Andrade*, 538 U.S. 63,
75-76 (2003); *Mancebo v. Adams*, 435 F.3d 977, 978 (9th Cir. 2006). To determine whether
a state court ruling was "contrary to" or involved an "unreasonable application" of federal
law, courts must look exclusively to the holdings of the Supreme Court which existed at the
time of the state court's decision. *Mitchell v. Esparza*, 540 U.S. 12, 15-15 (2003);
*Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). Accordingly, the Ninth Circuit has
acknowledged that it cannot reverse a state court decision merely because that decision
conflicts with Ninth Circuit precedent on a federal constitutional issue. *Brewer v. Hall*, 378
F.3d 952, 957 (9th Cir. 2004); *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).

Even if the state court neither explained its ruling nor cited United States Supreme
Court authority, the reviewing federal court must nevertheless examine Supreme Court
precedent to determine whether the state court reasonably applied federal law. *Early v.
Packer*, 537 U.S. 3, 8 (2003). The United States Supreme Court has expressly held that
citation to federal law is not required and that compliance with the habeas statute "does not
even require awareness of our cases, so long as neither the reasoning nor the result of the
state-court decision contradicts them." *Id.*

A state court's decision is "contrary to" federal law if it applies a rule of law "that
contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of

facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Mitchell v. Esparza*, 540 U.S 12, 14 (2003)(citations omitted); *Williams v. Taylor*, 529 U.S. 362, 411 (2000).

A state court decision involves an "unreasonable application of" federal law if the court identifies the correct legal rule, but unreasonably applies the rule to the facts of a particular case. *Williams*, 529 U.S. at 405; *Brown v. Payton*, 544 U.S. 133, 141 (2005). An incorrect application of federal law does not satisfy this standard. *Yarborough v. Alvarado*, 541 U.S. 652, 665-66 (2004) (stating that "[r]elief is available under § 2254(d)(1) only if the state court's decision is objectively unreasonable.") "It is not enough that a federal habeas court, in its independent review of the legal question," is left with the "firm conviction" that the state court ruling was "erroneous." *Id.*; *Andrade*, 538 U.S. at 75. Rather, the petitioner must establish that the state court decision is "objectively unreasonable." *Middleton v. McNeil*, 541 U.S. 433 (2004); *Andrade*, 538 U.S. at 76.

Where a state court decision is deemed to be "contrary to" or an "unreasonable application of" clearly established federal law, the reviewing court must next determine whether it resulted in constitutional error. *Benn v. Lambert*, 283 F.3d 1040, 1052 n. 6 (9th Cir. 2002). Habeas relief is warranted only if the constitutional error at issue had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993). In § 2254 proceedings, the federal court must assess the prejudicial impact of a constitutional error in a state-court criminal proceeding under *Brecht's* more forgiving "substantial and injurious effect" standard, whether or not the state appellate court recognized the error and reviewed it for harmlessness under the "harmless beyond a reasonable doubt" standard set forth in *Chapman v. California*, 386 U.S. 18, 24 (1967). *Fry v. Pliler*, 551 U.S. 112, 121-122 (2007). The *Brecht* harmless error analysis also applies to habeas review of a sentencing error. The test is whether such error had a "substantial and injurious effect" on the sentence. *Calderon v. Coleman*, 525 U.S. 141, 145-57 (1998) (holding that for habeas relief to be granted based on constitutional error

1  in capital penalty phase, error must have had substantial and injurious effect on the jury's

2  verdict in the penalty phase.).  The Court will review Petitioner's claims under the

3  applicable standard of review.

4  **IV.  Merits Review**

5      **A.  Ground One - Jury Composition**

6      In Ground One, Petitioner argues that the Sixth Amendment was violated because the

7  jury was not "drawn from a source fairly representative of the community." (docket # 1 at

8  6) (quoting *Taylor v. Louisiana*, 419 U.S. 522 (1975)).  Petitioner asserts that, "according to

9  the internet," 23 percent of registered Arizona voters are Hispanic.  (docket # 1 at 6)

10  Petitioner argues that the "pool of 100 persons" from which the jury was drawn, only

11  included two Hispanics, and only one Hispanic sat on the jury that decided his case.  (docket

12  # 1 at 6)

13      On direct appeal, Petitioner argued that he was denied a fair trial because the jury

14  consisted only of "white" jurors, but there should have been "three persons of each race" on

15  the jury. (Respondents' Exh. D at 2)   In his petition for review to the Arizona Court of

16  Appeals of the trial court's denial of his petition for post-conviction relief, Petitioner stated

17  that, although the jury venire included minorities, none were selected for his jury.

18  (Respondents' Exh. I)  Petitioner never presented the factual assertions in his Petition to any

19  state court and, therefore, is precluded from raising new arguments in this proceeding.  *See*

20  *Williams v. Taylor*, 529 U.S. 420, 435 (2000).

21      Moreover, Petitioner's claim lacks merit.  The Sixth Amendment guarantees the right

22  to a trial by a jury drawn from a representative cross section of the community.  *Duren v.*

23  *Missouri*, 439 U.S. 357, 364 (1979).  Courts apply the following three-part test to determine

24  whether a cross-section violation occurred:

25          (1) that the group alleged to be excluded is a 'distinctive' group in the community;

26          (2) that the representation of this group in venires from which juries are selected is

27          not fair and reasonable in relation to the number of such persons in the community; and

28

(3) that this under representation is due to systematic exclusion of the group in the jury-selection process.

*Duren*, 439 U.S. at 364.  Where petitioner establishes a *prima facie* case, the burden shifts to the state to show that "attainment of a fair cross section is incompatible with a significant state interest." *Thomas v. Borg*, 159 F.3d 1147, 1150 (9th Cir. 1998) (citing *Duren*, 439 U.S. at 367-68).

The Court assumes that Hispanics constitute a "distinctive group" for purposes of the first prong of the *Duren* test.  Petitioner, however, fails to satisfy the second prong which requires that the distinctive group is underrepresented in "venires" from which "juries" are selected.  *Duren*, 439 U.S. at 668.  The Ninth Circuit has explained that the Supreme Court's use of the plural in articulating the *Duren* test indicates that a fair cross-section violation cannot be based on under representation in a single venire or jury.  *United States v. Miller*, 771 F.2d 1219, 1228 (9th Cir. 1985).  Although "juries must be drawn from a source fairly representative of the community, the composition of each jury need not mirror that of the community." *Id.* (citing *Taylor v. Louisiana*, 419 U.S. 522, 538 (1975)).

Here, Petitioner does not claim that under representation occurred generally in Maricopa County venires.  *See Miller*, 771 F.2d at 1228 (rejecting fair cross-section claim where claim was limited to a particular venire from which petitioner's jury was selected.)  Rather, Petitioner asserts that "[i]n the present case the pool where the jury was drawn was not representative of the community, neither was the jury that found the petitioner guilty." (docket # 1 at 8).  Additionally, Petitioner fails to allege, let alone provide any evidence, that Hispanics, or any other minority, are systematically excluded from the jury selection process in Maricopa County.  *See Duren*, 439 U.S. at 668.  Based on the foregoing, the Court finds that Petitioner fails to establish a fair-cross section claim.  Accordingly, he is not entitled to relief on Ground One.

Because Petitioner's underlying challenge to the venire and jury composition fails, his claim that trial counsel was ineffective in failing to object thereto, raised in Ground 2(a), likewise fails for lack of prejudice. *See Strickland*, 466 U.S. at 688; *Thomas v. Borg*, 159

F.3d 1147, 1152-53 (9th Cir. 1998) (holding that petitioner failed to establish that trial counsel rendered ineffective assistance in failing to object to the jury composition where petitioner failed to show that he suffered prejudice as a result of counsel's alleged errors.)

**B.  Ground 2(b) - Ineffective Assistance of Counsel**

In his Ground 2(b), Petitioner argues that trial counsel was ineffective for failing to address inconsistent testimony of state witnesses during closing argument.  (docket # 1 at 10-11)

The controlling Supreme Court precedent on claims of ineffective assistance of counsel is *Strickland v. Washington*, 466 U.S. 668 (1984).  Under *Strickland*, a petitioner must show that counsel's performance was objectively deficient and that counsel's deficient performance prejudiced the petitioner.  *Strickland*, 466 U.S. at 687; *Hart v. Gomez*, 174 F.3d 1067, 1069 (9th Cir. 1999).  To be deficient, counsel's performance must fall "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. When reviewing counsel's performance, the court engages a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment.  *Strickland*, 466 U.S. at 690.  "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.  Review of counsel's performance is "extremely limited." *Coleman v. Calderon*, 150 F.3d 1105, 1113 (9th Cir. 1998), *rev'd on other grounds*, 525 U.S. 141 (1998). "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690.  Acts or omissions that "might be considered sound trial strategy" do not constitute ineffective assistance of counsel. *Strickland*, 466 U.S. at 689.

To establish a Sixth Amendment violation, petitioner must also establish that he suffered prejudice as a result of counsel's deficient performance. *Strickland*, 466 U.S. at 691-92; *United States v. Gonzalez-Lopez*, 548 U.S. 140,147 (2006) (stating that "a violation

of the Sixth Amendment right to effective representation is not 'complete' until the defendant is prejudiced.")  To show prejudice, petitioner must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Hart*, 174 F.3d at 1069; *Ortiz v. Stewart*, 149 F.3d 923, 934 (9th Cir. 1998).  Petitioner bears the burden of proving prejudice, the mere possibility that he suffered prejudice is insufficient to satisfy *Strickland's* prejudice prong.  *Cooper v. Calderon*, 255 F.3d 1104, 1109 (9th Cir. 2001).  The court may proceed directly to the prejudice prong.  *Jackson v. Calderon*, 211 F.3d 1148, 1155 n. 3 (9th Cir. 2000) (citing *Strickland*, 466 U.S. at 697).  The court, however, may not assume prejudice solely from counsel's allegedly deficient performance.  *Jackson*, 211 F.3d at 1155.

As mentioned above, Petitioner argues that trial counsel was ineffective for failing to emphasize during closing argument that the police officers' testimony was inconsistent.  During trial, the four police officers who responded to the scene the night of Petitioner's arrest each testified.  Officer Jones testified that he remained in the backyard when the three other officers entered a shed.  Jones testified that, after he identified himself as a police officer, Petitioner pointed a gun at him, and then threw the gun and ran when Officer Jones reached for his holstered gun.  (Respondents' Exh. L at 30)  Another officer testified that he exited the shed too late to see Petitioner point the gun at Officer Jones, but that he saw Petitioner throw the gun and run.  (Respondents' Exh. L at 70-74) Another officer testified that he saw Petitioner holding the gun and moving it away from Officer Jones.  (Respondents' Exh. L at 103, 105-06)  The fourth officer testified that she probably exited the shed last and only saw Petitioner running away.  (Respondents' Exh. L at 134-135)

Contrary to Petitioner's assertion, counsel's closing argument focused on the differences between the police officers' testimony.  (Respondents' Exh. K at 15) Trial counsel argued that this "case is all about credibility and believability and accuracy." (Respondents' Exh. K at 15)  He further argued:

> Do you think the testimony of the officers with regard to identification, and
> by the way, do you think that the officers thought that was the big-ticket issue,
> that that was the winner? How credible were they on that point? One hundred
> percent certain. Don't you think that no one really saw much of anything in
> the pitch blackness of that backyard? Don't you think that no one really knew
> what that object was until it was all over and Officer Wuertz goes outside to
> retrieve it from the couch and then they're probably pissed.

(Respondents' Exh. K at 16) Trial counsel discussed each police officer's testimony and explained how it was different, inconsistent, and incredible with regard to identifying Petitioner. (Respondents' Exh. K at 16-18) Counsel then discussed the officers' testimony regarding the timing of the events, emphasized the differences between the officers' testimony, and explained why their testimony was not credible. (Respondents' Exh. K at 18-19) Counsel also pointed out the inconsistencies in the officers' testimony regarding where Petitioner pointed the gun. (Respondents' Exh. K at 19-20) In summarizing these inconsistencies, trial counsel argued:

> And these inconsistencies, these discrepancies, on such a crucial issue or so
> they believed, doesn't that create doubts in your mind about the rest of it?
> Doesn't it create questions? . . . And it doesn't have to be necessarily anyone
> being dishonest, but at the very least, it shows that people can be 100 percent
> wrong about very important, crucial facts. So, what else are they 100 percent
> wrong about?

(Respondents' Exh. K at 20) Because trial counsel's closing argument focused on the inconsistencies in the police officers' testimony, Petitioner's assertion that counsel was ineffective for failing to "address[] inconsistent testimony in his closing argument" lacks merit. Petitioner has not shown that the trial court's determination that Petitioner's claim of ineffective assistance did not meet either prong of *Strickland* was contrary to, or involved an unreasonable application of, federal law. Accordingly, Petitioner is not entitled to habeas corpus relief on Ground 2(b).

### C. Ground Three - Sufficiency of the Evidence

In Ground Three, Petitioner argues that there was insufficient evidence to support his conviction for aggravated assault. Specifically, he argues that he "admitted holding the gun," but there was not sufficient evidence to establish that he pointed it at the police officer.

Petitioner presented a state-law claim of insufficient evidence to the appellate court which held that, "[t]he evidence permitted the jury to find beyond a reasonable doubt that Defendant committed aggravated assault." (Respondents' Exh. B at 6) Petitioner fails to establish that the trial court's decision rests on an unreasonable determination of the facts or is based on an unreasonable application of, or is contrary to, federal law. *See* 28 U.S.C. § 2254.

When reviewing the sufficiency of evidence to support a conviction, the court must determine whether, considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty of the essential elements of the crime beyond a reasonable doubt. *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). If no rational trier-of-fact could find proof of guilt beyond a reasonable doubt, the petition for a writ of habeas corpus must issue. *Payne v. Borg*, 982 F. 2d 335, 337 (9th Cir. 1992). "The reviewing court must respect the province of the fact-finder to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts by assuming that the fact-finder resolved all conflicts in a manner that supports the verdict." *Walters*, 45 F. 3d at 1358. "In considering a petition for a writ of habeas corpus, the district court is required to 'make its determination as to the sufficiency of the state court findings from an independent review of the record or otherwise grant a hearing and make its own findings on the merits.'" *Richmond v. Ricketts*, 774 F.2d 957, 961 (9th Cir. 1985) (quoting *Turner v. Chavez*, 586 F. 2d 111, 112 (9th Cir. 1978)).

In affirming Petitioner's conviction for aggravated assault, the Arizona Court of Appeals described the evidence supporting the conviction as follows:

> At trial, Officer Jones testified that Defendant pointed a shotgun at him. The three other officers from the scene testified that they heard Officer Jones identify himself as a police officer. Although none of the officers observed Defendant point the shotgun at Officer Jones, two of the officers testified that they saw Defendant throw the shotgun. This constitutes sufficient evidence to support the verdict.

(Respondents' Exh. B at 6)   In addition to the foregoing, the record reflects that Petitioner admitted to police that he pointed a shotgun at Officer Jones, but claimed that he did not know what he was doing because he had been smoking crack cocaine for three days straight. (Respondents' Exh. L at 86)   On review, this Court cannot find that, based on the evidence, no rational finder of fact could have found Petitioner guilty beyond a reasonable doubt.  *See Payne*, 982 F.2d at 337.  Although Petitioner testified to a different version of the events, the credibility determinations were the province of the jury and are entitled to "near-total deference."  *Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004) (citation omitted).

Petitioner has not shown that the State court's decision was contrary to, or based on an unreasonable application of federal law, or was based on an unreasonable determination of the facts.  28 U.S.C. § 2254(d).  Accordingly, Petitioner is not entitled to habeas corpus relief on Ground Three.

### D.  Ground Four - Fourth Amendment Violation

In Ground Four, Petitioner argues that police violated the Fourth Amendment by entering the backyard of the house where Petitioner was found without a search warrant. (docket # 1 at 13)  Petitioner raised this issue on direct appeal and the court rejected it. (Respondents' Exh. B)

Because Petitioner had a full and fair opportunity to litigate his Fourth Amendment claim in state court, he is not entitled to relief on this claim.  The Ninth Circuit recognizes that "[i]f the state has provided a state prisoner an opportunity for full and fair litigation of his Fourth Amendment claim, we cannot grant federal habeas relief on the Fourth Amendment issue."  *Moormann v. Schriro*, 426 F.3d 1044, 1053 (9th Cir. 2005) (citing *Stone v. Powell*, 428 U.S. 465, 494 (1976)).  In determining whether a state prisoner had a full and fair opportunity to litigate his Fourth Amendment claim, a court should examine the extent to which the claim was considered by the state trial and appellate courts.  *See Abell v. Raines*, 640 F.2d 1085, 1088 (9th Cir.1981) (finding that a 45-page evidentiary hearing transcript, a four-page appellate opinion, and substantial briefs demonstrated careful consideration of appellant's Fourth Amendment claim).

Petitioner raised a Fourth Amendment claim to the Arizona Court of Appeals. He argued that the police did not have a search warrant or probable cause to enter the backyard. (Respondents' Exhs. at B, D) The appellate court rejected Petitioner's Fourth Amendment claim, finding that Petitioner "does not assert, nor could he have had, a reasonable expectation of privacy in the backyard of an abandoned house" where he was discovered by police. (Respondents' Exh. B at 8) Petitioner had a full and fair opportunity to litigate his Fourth Amendment claim to the state courts and, as such, this Court cannot grant habeas relief. *Moormann*, 426 F.3d at 1053.

Moreover, Petitioner has not shown that the State court's rejection of his Fourth Amendment claim was contrary to, or rested on an unreasonable interpretation of, federal law. 28 U.S.C. § 2254(d). In addition to arguing that police lacked probable cause or a search warrant to enter the backyard, Petitioner now argues that the house where he was found was not abandoned. (docket # 1 at 13) When interviewed by police after the incident, Petitioner stated that the house where he was found belonged to a "friend," but could not recall that friend's name. (Respondents' Exh. L at 85-86) He also told police that he was not sure if the house was abandoned. (Respondents' Exh. L at 85-86) At trial, Petitioner explained that the "friend" to whom he was referring was "[t]he one that had rented the house." (Respondents' Exh. M at 19) Petitioner also testified that the house had "no power at all." (Respondents' Exh. M at 12) He further stated that he doesn't know if the house was abandoned, but there were people living there. (Respondents' Exh. M at 19) Petitioner testified that he did not live at the house. (Respondents' Exh. M at 24) Police Officer Jones testified that, when he received the call on December 10, 2004, he was familiar with the address and "had known the house was abandoned for some time." (Respondents' Exh. L at 27-28) The following exchange occurred when Petitioner testified:

Mr. Murray [Petitioner's Counsel]: I want to talk about the abandoned house.

Petitioner: All right, sir.

Mr. Murray: Do you understand what I am talking about?

Petitioner: Yes, sir.

- 25 -

1     Mr. Murray.  Why were you there?

2     Petitioner: I went to buy drugs for my use.

3     Mr. Murray.  Did you ever buy them?

4     Petitioner: Yes, sir.

5   (Respondents' Exh. M at 9)  Petitioner's counsel characterized the house as abandoned.

6       The "capacity to claim the protection of the Fourth Amendment depends . . . upon

7   whether the person who claims the protection of the Amendment has a legitimate

8   expectation of privacy in the invaded place." *Minnesota v. Olson*, 495 U.S. 91, 95-96

9   (1990) (quotation omitted).  "A subjective expectation of privacy is legitimate if it is 'one

10  that society is prepared to recognize as reasonable.'" *Id*. (quoting *Rakas v. Illinois*, 439 U.S.

11  128, 143-44 (1978)).  The issue is "whether the challenged search or seizure violated the

12  Fourth Amendment rights of a criminal defendant who seeks to exclude the evidence

13  obtained during it." *Rakas*, 439 U.S. at 140.  "That inquiry in turn requires a determination

14  of whether the disputed search and seizure has infringed on the interest of the defendant

15  which the Fourth Amendment was designed to protect." *Id*.

16      Here, the record supports the State court's finding that Petitioner did not have

17  legitimate expectation of privacy in the backyard of the abandoned house.  Petitioner neither

18  owned nor lived in the house.  Although he claimed a friend owned the house, he could not

19  identify that person, and was unsure whether the house was abandoned.  In view of the

20  foregoing, Petitioner has not shown that the Arizona Court of Appeals' determination that he

21  lacked a reasonable expectation of privacy in the backyard was an unreasonable application

22  of federal law, or based on an unreasonable determination of the facts.  28 U.S.C. § 2254(d).

23  Accordingly, Petitioner is not entitled to relief on Ground Four.

24  **V. Summary**

25      As discussed above, Petitioner claims asserted in Grounds 1, 2(a), and 3 are

26  procedurally defaulted and barred from federal habeas corpus review.  Additionally, all of

27  Petitioner's claims lack merit.

28      Accordingly,

- 26 -

**IT IS HEREBY RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus (docket # 1) be **DENIED**.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment. The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See,* 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(e), Federal Rules of Civil Procedure. Thereafter, the parties have ten days within which to file a response to the objections. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See*, Rule 72, Federal Rules of Civil Procedure.

DATED this 10th day of August, 2009.


Lawrence O. Anderson
United States Magistrate Judge